Green, J.
delivered the opinion of the court.
In the first part of the charge given in the court below, the circuit judge has given an opinion in direct conflict with the opinion of this court, in the cases of Grubb vs M’Clatchy, and of Morgan vs Fowler. In both these cases, the lessors of the plaintiff were white men, who had married Indian wives; but the court held, that although citizens of the United States to every extent which can be assumed in the present *454 case, they were nevertheless, each the head of an Indian family. True, the fact of marrying an Indian wife would not, of itself, give a citizen of the United States a right to a reservation; but the forming such connection, taking up a residence among the Indians in the nation, and identifying himself with them, would constitute him the head of an Indian family, which, coupled with a residence at the time of the treaty within the ceded territory, and enrolling his name for a reservation, would give him such right.
It was known, when the treaty was made, that many white men had married Indian wives, and resided in the nation, whose interests were entirely identified with the Indians. These men exercised great influence in the nation, and were most likely to be benefit-ted by reservations. It was important to conciliate them, and by making it their interest, enlist their influence in promoting the treaty about to be made. We must suppose they were intended to be provided for, and that the words, “head of an Indian family,” were inserted with an express view to them. Thus, while on the one hand, the idea is kept up that the provision was for the benefit of the Indians, on the other, such language is used, as that white men, having the relation of the “heads of Indian families,” should be permitted to participate in the advantages of the stipulation. So far, therefore, from excluding white men thus situated, I consider the primary design of this peculiar phraseology to have been inserted for their benefit.
We come now to -the question, whether, as Tuten sold an improvement on which he lived at the date of the treaty of 1817, and before he registered his name for a reservation, and in the fall of the year removed to the place now in dispute, he is thereby excluded from the right to take this reservation.
In the cases of Grubb and of Morgan, before re *455 ferred to, the court held it was not essential to the va-liditj of a reservation, that the reserve© should have had any improvement or residence on the place claimed by him, at the date of the treaty of 1817. But if we adhere strictly to the terms of the treaties, the case comes within them. His residence on the reservation commenced in the fall of 1817. His name was registered for a reservation there, on the 25th May, 1818. It included his improvement upon which he resided when the treaty of 1819 was made; the title vested by virtue of this treaty, and the stipulation in the treaty of 1819, is referable to their situation then, and not to what it had been in 1817. The language is, “do agree to allow a reservation of 640 acres to each head of an Indian family residing within the ceded territory,” &c. using the present tense. Although the reservation was to be taken in th© manner prescribed in the 8th article, of the treaty of 1817, yet the situation of those entitled, as it existed in February, 1819, and not at any previous time, was to h.e the criterion by which the right to a reservation was to be tested.
If this view of the case be correct, it matters not how many places the lessor of the plaintiff had previously improved and sold. Upon this point then, the circuit court also erred.
How far the act of the Cherokee agent, in receiving the registry of the names for reservations, is to be considered conclusive of any, or all the facts necessary to constitute a right to a reservation, it is not now necessary to discuss. The court has heretofore, in adjudicating upon these cases, proceeded upon the idea that all these facts were open to investigation in the courts, and were necessary to be proven to have existed as required by the treaties. It cannot, however, but be seen, that if the evidence of these titles is to rest wholly in the memory of witnesses, it must, in a few years, cease to exist at all, and the reservee, his heirs or as *456 signs, will have to depend exclusively for their title Upon acont-jnliecl possession of the land.
The judgment in this case must he reversed, and the cause remanded to he again heard upon the principles contained in this opinion.
Judgment reversed.